**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,


        - v -                                  No. 1:11-CR-103
                                               (TJM/RFT)
DAVID R. KARPER, JR.

                              Defendant.


| APPEARANCES: | OF COUNSEL: |
|---|---|
| HON. RICHARD S. HARTUNIAN | TINA E. SCIOCCHETTI |
| United States Attorney | Ass't United States Attorney |
| for the Northern District of New York | |
| *Attorney for the Government* | |
| James T. Foley Courthouse | |
| 445 Broadway | |
| Albany, New York 12207 | |
| | |
| HON. LISA PEEBLES | TIMOTHY E. AUSTIN |
| Federal Public Defender | Ass't Public Defender |
| *Attorney for Defendant* | |
| 39 North Pearl Street | |
| Albany, New York 12207 | |

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## MEMORANDUM-DECISION and ORDER

On March 2, 2011, the Grand Jury returned a two count Indictment against David Karper charging him with violating 18 U.S.C. §§ 2252A(a)(2) and 2256(8)(A), receipt of child pornography, and §§ 2252A(a)(5)(B) and 2256(8)(A), possession of child pornography. Dkt. No. 1, Indictment. On March 17, 2011, without the benefit of an arrest warrant, Karper appeared for his arraignment. Based upon the recommendation of Pretrial Services and the Government, Karper was released on Conditions of Release. Min. Entry, dated Mar. 17, 2011; Dkt. No. 2, Order, dated Mar. 17, 2011. In recommending that Karper be released on his own recognizance with conditions, the

Government moved and insisted that those Conditions include those required by the Adam Walsh Act Amendments to the Bail Reform Act. *See* 18 U.S.C. § 3142, *et seq*. Most of the Conditions of Release to be imposed were agreeable to Karper, however, he registered a vigorous protest against the imposition of (1) home detention and (2) electronic monitoring.[1]

Notwithstanding Karper's opposition to these two Conditions at his arraignment, this Court imposed them nonetheless, however, we further granted Karper permission to file a motion challenging the imposition thereof. Dkt. No. 2, Order, dated Mar. 17, 2011. On March 31, 2011, Karper filed a Motion to Strike the Conditions of Pretrial Release on the grounds that the mandated provisions of the Adam Walsh Act Amendments violate his right (1) to procedural due process under the Fifth Amendment to the United States Constitution, and (2) to the Eight Amendment's prohibition against excessive bail. Dkt. No. 7, Def.'s Mot. to Strike. Succinctly, Karper argues that the Bail Reform Act, *via* the Adam Walsh Act Amendments, mandatory impositions of the most restrictive types of release conditions in each and every case, with no opportunity to be heard thereupon and without judicial discretion to either consider or reject those conditions, violate the Constitution. On April 27, 2011, the Government filed a Memorandum of Law opposing Karper's Motion. Dkt. No. 9. Immediately thereafter, Karper filed a Memorandum of Law replying to the Government's Opposition. Dkt. No. 10.

## I. BACKGROUND

Pursuant to an investigation, the New York State Police discovered that someone at Karper's

---

[1] Karper's Conditions of Release include, *inter alia*, (1) reporting to pretrial services, (2) restricting travel to the Northern District of New York, (3) seeking employment, (4) refraining from excess use of alcohol and any drug use, (5) home detention with electronic monitoring, (6) not using or possessing a computer without the approval of Pretrial Services, and (7) not frequenting places where persons under the age of 18 are likely to congregate. Dkt. No. 2, Order, dated Mar 17, 2011.

address was receiving child pornography.  A search warrant of Karper's residence was executed in November 2010 and his computer was seized.  The Government proffered that approximately 179 images were located within Karper's computer, to which he admitted downloading.  Dkt. No. 9 at pp. 1-2.  Realizing that potential criminal charges were forthcoming, Karper did not attempt to flee and remained within the jurisdiction until his ultimate appearance before this Court at his arraignment on March 17, 2011.

Karper is a 29 year old man who has resided in Schoharie County for most of his life and currently lives with his parents and a sibling.  Karper has attended college and has been regularly employed, however, he has been unemployed since June 2010 and was collecting unemployment benefits at the time of his Arraignment.  He is a beneficiary of good health and has no history of (1) mental or emotional issues, (2) use of drugs, or (3) abuse of alcohol.  Karper does not have a criminal conviction, though he was arrested as a juvenile delinquent for removing a motorcycle from a neighbor's barn.  Dkt. No. 7 at pp. 3-4.

At no time during the Arraignment did the Government argue or proffer that Karper posed a risk of flight or a danger to the community.  Rather, the Government defaulted to its typical posture when a defendant is accused with the receipt and possession of child pornography by moving for the conditions of release as mandated by the Adam Walsh Act.

## II.  BAIL REFORM ACT

The Bail Reform Act of 1984 is a rather comprehensive statutory scheme used to determine whether an arrestee will be released or detained during the pendency of the prosecution.  18 U.S.C. § 3141, *et seq.*  This Act was enacted in order to correct the regrettable circumstances of district courts being compelled to set monetary bails, which, too often, were too high for indigent defendants

to meet, and thus encumbered with detention prior to trial. Significantly, in enacting the Bail Reform Act, Congress recognized "the traditional presumption favoring pretrial release for the majority of Federal defendants." *United States v. Berrios-Berrios,* 791 F.2d 246, 250 (2d Cir.) (internal quotation marks and citation omitted), *cert. dismissed,* 479 U.S. 978 (1986); *United States v. Morris*, 2000 WL 1455244, at *3 (N.D.N.Y. Sept. 21, 2000) (noting that "[b]y its very language, the Bail Reform Act demonstrates its favorable inclination toward pretrial release of federal criminal defendants."). Therefore, the general expectation of the Bail Reform Act is that a defendant shall be released on his own recognizance or unsecured bond, "unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. §§ 3142(a)(1) & 3142(b). When a court determines that a release on recognizance will not assure a defendant's appearance or ameliorate any danger, it may release the accused, nonetheless, on the "least restrictive" condition or combination of conditions. *Id*. at §§ 3142(a)(2) & 3142(c).[2] However, based upon the revelations heard during a hearing,[3] a court may detain a defendant if it finds that there are no conditions or combination of

---

[2] Under these circumstances, a court is not mandated to impose any particular condition. Rather, the statute provides that a court may impose a condition or a combination of conditions, which may include any of those that are enumerated. *See* 18 U.S.C. § 3142(c)(1)(B)(i) through (xiv). These fourteen enumerated conditions are completely discretionary, that is, it remains solely within a court's complete discretion as to what is necessary to assure an appearance in court and the safety of the community.

[3] The Government's right to a detention hearing exists in certain specifically enumerated circumstances, including when 1) the case involves a crime of violence; 2) the case involves an offense punishable by life imprisonment or death; 3) the crime charged is a drug related offense with a maximum term of imprisonment of ten years or more; 4) the defendant is charged with a felony after having been convicted of two or more prior qualifying offenses (*i.e.,* crimes of violence, punishable by up to life imprisonment or death, or drug related offenses punishable by incarceration of at least ten years); 5) the case involves a *serious* risk of flight; 6) the case involves a *serious* risk of obstruction or attempted obstruction of justice or intimidation of a prospective witness or juror;

(continued...)

*-4-*

conditions that will "reasonably assure the appearance of the person as required and the safety of any other person and the community." *Id*. at § 3142(e).

Risk of flight is not the exclusive basis for detaining an accused. The Bail Reform Act also instituted dangerousness as a basis for detention. *United States v. LaFontaine*, 210 F.3d 125, 134 (2d Cir. 2000); *see also United States v Dono*, 275 F. App'x. 35, 38 (2d Cir. 2008) (unpublished opinion) ("[P]retrial detention was the means chosen by Congress in the Bail Reform Act to protect the community from dangerous defendants."); *United States v. Jimenez*, 104 F.3d 354 (2d Cir. 1996). When detention is based wholly or in part on a determination of dangerousness, such finding must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f)(2)(B); *see also United States v. Ferranti*, 66 F.3d 540, 542 (2d Cir. 1995); *United States v. Rodriguez,* 950 F.2d 85, 88 (2d Cir. 1991). In cases involving crimes designated as violent, there is a rebuttable presumption that the defendant presents a danger to the community, 18 U.S.C. § 3142(e)(2), yet the burden of persuasion rests always with the Government. If a defendant exercises his opportunity to be heard and submits arguments and facts to overcome the presumption, the presumption is not lost but weighed along with other factors in considering detention. *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001) (citing, *inter alia*, *United States v. Rodriguez*, 950 F.2d at 88).

In 2006, Congress enacted the Adam Wash Act Amendments which mandate the imposition of specific conditions for release of a person charged with child pornography or offenses against a minor: "In any case that involves a minor victim under . . . [18 U.S.C.] § 2252(A)(a)(2) . . . any

---

[3](...continued)
or (7) any felony that is not otherwise a crime of violence that involves a minor victim or involves the possession or use of a firearm, destructive device, or dangerous weapon, or involves the failure to register under 18 U.S.C. § 2250. 18 U.S.C. § 3142(f) (emphasis added).

release order shall contain, at a minimum, a condition of electronic monitoring[.]"[4] 18 U.S.C. §
3142(c)(1).  In this respect, the Adam Walsh Act is "plain, unambiguous, and mandatory."  *United
States v. Polouizzi*, 697 F. Supp. 2d 381, 386 (E.D.N.Y. 2010); *United States v. Crowell*, 2006 WL
3541736, at *4 (W.D.N.Y. Dec. 7, 2006) (citing *McNeil v. United States*, 508 U.S. 106, 111 (1993),
for the legal axiom that "the use of the word shall is unequivocal").  In our case, Karper is charged
with receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2) and because of that charge
and the Amendments mandates, he was subjected to home detention[5] and electronic monitoring,
without an opportunity to be heard as to whether such Conditions were applicable or even necessary
as to him and without the Court exercising its discretion accordingly.

### III.  CONSTITUTIONAL CHALLENGES

Karper  moves  this  Court  to  strike  the  Conditions  of  home  detention  and  electronic
monitoring in that the Adam Walsh Act Amendments are mandatory in every case without an
opportunity to be heard as to these release conditions and without the benefit of a court's discretion,
which is faithfully provided in all other types of federal charges, and thus violates the United States
Constitution.  Karper raises both a facial and "as-applied" challenge.  There is a legal and analytical

---

[4]   This particular provision of the Bail Reform Act states that
[i]n any case that involves a minor victim under section 1201, 1591, 2241, 2242,
2244(a)(1), 2245, 2251, 2251A, 2252(a)(1), 2252(a)(2), 2252(a)(3), 2252A(a)(1),
2252A(a)(2), 2252A(a)(3), 2252A(a)(4), 2260, 2421, 2422, 2423, or 2425 of this
title, or a failure to register offense under section 2250 of this title, any release order
shall contain, at a minimum, a condition of electronic monitoring and each of the
conditions specified at subparagraphs (iv), (v), (vi), (vii), and (viii).
18 U.S.C. § 3142(c)(1)(B).


[5]  With regard to the Adam Walsh Act, this Court is using home detention and curfew
interchangeably.

distinction between facial and "as-applied" challenges.

"A facial challenge to a statute considers only the text of the statute itself, not its application to the particular circumstances of an individual. . . . [While] [a]n as-applied challenge, on the other hand, requires an analysis of the facts of a particular case to determine whether the application of a statute, even one constitutional on its face, deprived the individual to whom it was applied of a protected right."  *Field Day, LLC v. County of Suffolk*, 463 F.3d 167, 174-75 (2d Cir. 2006) (citing, *inter alia*, *City of Lakewood v. Plain Dealer Pub. Co.,* 486 U.S. 750, 770 n.11 (1988) & *Wisconsin Right to Life, Inc. v. FEC,* 546 U.S. 410 (2006) (holding that *McConnell v. Fed. Election Comm'n,* 540 U.S. 93 (2003), which held that even if a statute is found facially constitutional, it does not foreclose a subsequent "as-applied" challenge).

The legal dynamics between the two types of constitutional challenges are consequential. If a facial constitutional challenge is granted, the Government cannot enforce it under any circumstances, unless a court narrows the application; whereas, if it held that a statute is unconstitutional as applied to a particular set of facts, the Government can enforce it differently under dissimilar situations.  *United States v. Arzberger*, 592 F. Supp. 2d 590, 598 (S.D.N.Y. 2008) (citation omitted); *see also United States v. Polouizzi*, 697 F. Supp. 2d at 387 ("In an as-applied challenge, the question is whether the statute would be unconstitutional if applied literally to the facts of the case. . . Factual context and defendant's circumstances are critical.").  Further, as the Supreme Court has noted, "[a] facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid."  *United States v. Salerno*, 481 U.S. 739, 745 (1987). The Supreme Court further cautions courts and urges judicial restraint by noting that facial

challenges are disfavored because they are often based upon speculation and "[a]s a consequence, they raise the risk of premature interpretation of statutes on the basis of factually barebone records . . . . or formulate a rule of constitutional law broader than is required by the precise facts to which it is being applied[.]" *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450 (2008) (internal quotation marks and citations omitted).

### A. Due Process

The Due Process Clause of the Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property without due process of law."  U.S. CONST. amend V.  Due process means, in an elemental and fundamental sense, that there should be some form of a hearing in front of a neutral fact-finder and an opportunity to be heard "at a meaningful time and in a meaningful manner," before an individual is deprived of a fundamental right or property interest. *Matthews v. Eldridge*, 424 U.S. 319, 333-34 (1976) (citations omitted).  Further, due process also requires an analysis of the governmental and private interests affected by a statute.  In conducting that analysis, the Supreme Court has stressed that a court should weigh three distinct factors:

> First, the private interest that will be affected by the official action; Second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id*. at 335 (citation omitted); *see also Turner v. Rogers*, _U.S._, 131 S.Ct. 2507, 2511 (2011) (same). The Court will first determine what if any liberty interest or private interest may be affected by the Adam Walsh Act Amendments.

"A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,'" . . . or [by] an expectation or interest created by state law or policies[.]"

*Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citation omitted).  The putative right in question "must be implicit in the concept of ordered liberty," or "deeply rooted in this Nation's history and tradition." *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997) (quoting *Palko v. Connecticut*, 302 U.S. 319, 325 (1937) &  *Moore v. City of East Cleveland*, 431 U.S. 494, 503 (1977)).  Here, the Adam Walsh Act mandated curfew and electronic monitoring restrict the freedom of movement, also known as the right to travel, as well as dispense with the presumption of innocence at this stage of the criminal prosecution.  The right to travel has long been recognized as a liberty which cannot be deprived without due process of law.  *City of Chicago v. Morales*, 527 U.S. 41, 54 (1999) (citing *Kent v. Dulles*, 357 U.S. 116, 126 (1958) for noting that freedom of movement is "a part of our heritage"); *Selevan v. New York Thruway Auth.*, 584 F.3d 82, 100 (2d Cir. 2009) (finding a constitutional protection for intra and inter state travel); *Ramos v. Town of Vernon*, 353 F.3d 171, 176 (2d Cir. 2003) (noting that the constitutional right to free movement triggers strict scrutiny).

An equally recognized fundamental principle implicit within our concept of ordered liberty and deeply embedded within our nation's membrane is the presumption of innocence until proven guilty.  The "presumption of innocence . . . is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law." *Taylor v. Kentucky*, 436 U.S. 478, 483 (1978) (quoting *Coffin v. United States*, 156 U.S. 432, 453 (1895)).  Because it is so ingrained within our history and national psyche, courts have been warned to "be alert to factors that may undermine the fairness of the fact-finding process" and to "place out of bounds practices that threaten to dilute the presumption of innocence." *United States v. Brutus*, 505 F.3d 80, 85 (2007) (quoting in part, *Estelle v. Williams*, 425 U.S. 501, 503 (1976) & *United States v. Gaines*, 457 F.3d 238, 245-46 (2d Cir. 2006)).  In short, throughout our history and traditions, we have

zealously guarded the presumption of innocence, which heightened aegis, Congress, no less, enacted into the fabric of the Bail Reform Act: "Nothing in this section shall be construed as modifying or limiting the presumption of innocence."  18 U.S.C. § 3142(j).

Next, the Court must determine if there is a risk of an erroneous deprivation of these identified fundamental rights by the enforcement of the procedures mandated by the Adam Walsh Act Amendments, and whether additional safeguards are available.  This Court answers the former prong of this *Matthew v. Eldridge* test in the affirmative, while finding the latter in the negative.  By imposing home detention and electronic monitoring without the procedural safeguard of the opportunity to be heard and to present evidence or the exercise of judicial discretion of the discrete facts before it gives rise to a transparent if not a bald risk of an erroneous deprivation of these protected interests.  Without question, the Adam Walsh Act "substantially constrains the freedom-of-movement liberty," effectively dilutes the presumption of innocence, and "provides near certainty of erroneous deprivation of defendant's liberty interests."  *United States v. Polouizzi*, 697 F. Supp. 2d at 390 & 391.  The mandatory provisions of the Act, resting solely on the crime charged, effectively curtail any opportunity for an adversarial hearing on the question of a curfew and efficaciously diminish the procedural protections already embodied in the Bail Reform Act, creating an "irrebutable presumption."

In all other federal crimes that come before a federal court, whether drugs, acts of violence, or even murder, when the court is reviewing the matters of risk of flight and danger to the community as to that particular accused, the procedural due process proposition of the rebuttable presumption is omnipresent.  Rebuttable presumptions assure an accused an opportunity to be heard and present evidence to the contrary, maintain the burden of proof by clear and convincing evidence

upon the Government, and uphold the principle of an independent judicial review and exercise of discretion.

In fact, these are the bedrock principles confirmed by the Supreme Court in *United States v. Salerno*, 481 U.S. 739 (1987).  In *Salerno*, the Supreme Court addressed whether the element of dangerousness, as noted in the Bail Reform Act, could be a basis for detention prior to trial.  The petitioner made a facial constitutional challenge to the Bail Reform Act under both the Due Process Clause and Excessive Bail Clause.  Finding that the legislative history of the Bail Reform Act indicated a legitimate regulatory goal in addressing the pressing societal problem of community safety, the Supreme Court noted that such interest can, "**in appropriate circumstances**, outweigh an individual's liberty interest."  481 U.S. at 747-48 (emphasis added).  However, the Supreme Court did not find that the matter of dangerousness as a basis for detention was a congressionally driven "categorical imperative."  *Id*. at 748.  Because procedural safeguards are available during a hearing, such as the Government bearing the burden of establishing an accused's dangerousness by clear and convincing evidence, a judicial officer independently evaluating the likelihood of future dangerousness, an accused being able to testify, present evidence, cross examine witnesses, and otherwise be heard, as well as other due process protections, the Supreme Court could not "categorically state that pretrial detention [based upon dangerousness] offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental."  *Id*. at 750-52 (citation and quotation marks omitted).  In sum, it was the presence of these procedural precautions that drove the Supreme Court to find that dangerousness alone could be a basis for detention. The *Salerno* Court pronounced that "these [more exacting] extensive safeguards suffice to repel a facial challenge . . . . Given the legitimate and compelling regulatory purpose of the Act

and the procedural protection it offers, we conclude that the Act is not facially invalid under the Due Process Clause of the Fifth Amendment." *Id*. at 752.

The overall procedural review of dangerousness in the Bail Reform Act is readily distinguishable from the Adam Walsh Act Amendments which provide no such review and mandate a particular result. And, for that matter, the *Salerno* ruling is distinguishable from the facts confronting this Court as well. This Court acknowledges, like other courts, that safeguarding the physical and psychological well being of a minor is a compelling and a legitimate governmental interest, especially with regard to child pornography. *New York v. Ferber*, 458 U.S. 747, 757 (1982). Yet, protecting the community safety, and children in particular, does not create a *per se* rule that this government interest "always outweighs the constitutional right of liberty;" for, if that conclusion were perpetually so, then it would deny due process. *United States v. Polouizzi*, 697 F. Supp. 2d at 393. Rather, "that interest is in no way diminished by conducting an individual evaluation of the need for a curfew" and electronic monitoring, and "the additional burden of requiring an individual determination . . . [is] minimal." *United States v. Arzberger*, 592 F. Supp. 2d at 601. Moreover, there are other conditions available, such as eliminating or limiting computer use, directing an accused not to visit sites where persons under the age of eighteen may congregate, and precluding internet use or subjecting the accused to computer monitorization, that could very readily ameliorate any spectrum of future criminal behavior consistent with the nature of the charge. *See* 18 U.S.C. § 3142(c)(1)(B) & (C)(3) ("The judicial officer may at any time amend the order to impose additional or different conditions of release.").

This Court accepts the proposition that a party can only succeed with a facial challenge by establishing that no set of circumstances exists under which the Adam Walsh Act Amendments

imposition of a curfew and electronic monitoring would be appropriate. *Washington State Grange v. Washington State Republican Party*, 552 U.S. at 450. We also accept that in some circumstances the imposition of the conditions of home detention and electronic monitoring may be warranted. What the Court cannot embrace is that in all similar cases there is a *de jure*, wholesale waiver of procedural protections, especially those so noted in *Salerno*. "[B]y mandating certain pretrial release conditions, [the Amendments] effectively create an irrebutable presumption that the appearance at trial of arrestees charged with certain crimes, and the safety of the community, cannot be reasonable assured without such conditions." *United States v. Crowell*, 2006 WL 3541736, at *9. And, in this respect the law is unconstitutional in all of its applications because it universally forfeits an accused's opportunity to contest whether such conditions are necessary to ensure his return and to ameliorate any danger to the community.

The absence of procedural due process means that every defendant charged with receipt and possession of child pornography is outright denied an opportunity (1) to rebut the need to restrict his freedom of movement, (2) to interject his presumed innocence against the notion that he will prospectively engage in future crimes, and (3) to have an independent judicial evaluation of the compelling facts before a court. The Court cannot fathom how to more narrow the reach of the Adam Walsh Act, in terms of mandating conditions, in order to preserve its constitutionality, and still provide the required and basic due process elements. In fact, these features of the Adam Walsh Act offend principles of justice that are so rooted in tradition and society's conscience "as to be ranked fundamental." *Medina v. California*, 505 U.S. 437 (1992). Accordingly, this Court joins other courts and finds that these provisions of the Adam Walsh Act Amendments on their face violate the Due Process Clause of the Fifth Amendment. *United States v. Smedley*, 611 F. Supp. 2d

971 (E.D.Mo. 2009); *United States v. Merritt*, 612 F. Supp. 2d 1074 (D.Neb. 2009); *United States*

*v. Arzberger*, 592 F. Supp. 2d 590 (S.D.N.Y. 2008); *United States v. Torres*, 566 F. Supp. 2d 591

(W.D. Tex. 2008); *United States v. Crowell*, 2006 WL 351736 (W.D.N.Y. Dec. 7, 2006); *c.f., United*

*States v. Peeples*, 630 F.3d 1136 (9th Cir. 2010); *United States v. Stephens*, 594 F.3d 1033 (8th Cir.

2010); *United States v. Kennedy*, 327 F. App'x 706 (9th Cir. 2009).[6]

As the Court mentioned above, Karper also challenges the Act as it applied to him.  An "as-

---

[6]  The Eighth and Ninth Circuits, as well as courts within their respective Circuits, have found that the Adam Walsh Act mandatory release provisions were not unconstitutional on their face. *United States v. Peeples*, 630 F.3d 1136 (9th Cir. 2010); *United States v. Stephens*, 594 F.3d 1033 (8th Cir. 2010); *United States v. Kennedy*, 327 F. App'x 706 (9th Cir. 2009). These Circuits, in this Court's view, too quicky brushed aside an analysis of whether the entire release scheme under the Act precluded, in all cases, an opportunity to exercise the two most fundamental hallmark features of due process, as well as whether or not curfew and home detention may be appropriate in all circumstances. They unfairly weighed too heavily the Government's objective against the appropriateness of detention, rather than properly juxtaposing the Government's legitimate interest against our undisturbed adherence to the principles of due process. The Circuits generally gave short shrift to our notion of due process by finding that the Adam Walsh Act requires a court to exercise its discretion, "to the extent practicable," and that the accused is afforded an individualized determination of his release conditions inasmuch as the Act does not require curfew at a specific location or during specific time periods. *United States v. Peeples*, 630 F.3d at 1139 ("Because the Walsh Act requires the district court to exercise its discretion in applying the mandatory release conditions to each individual's circumstances, and in view of the established principle that a statute should be read to avoid serious constitutional issues, [a] constitutional challenge to the Walsh Act does not succeed.").

As a Court that is tasked with determining whether a person will be detained or released, and is obligated to follow the Adam Walsh Act as well, I strongly yet respectfully disagree with those appellate courts. First, when the Adam Walsh Act is at play, there is no judicial discretion to be exercised in any respect. Second, the Act mandates the location where curfew and electronic monitoring will take place - it is the accused's home or residence. There is no deviation from that point. And, to suggest that the statute does not say how long curfew may occur, or that a court has the discretion "to manipulate" setting the location and the time period for the curfew is unrealistic, without basis, and unconstitutionally shallow when you consider that there are substantial constitutional liberties at stake. Actually, if I were to follow these courts' logic, it would be conceivable for this Court to set curfew at the offices of pretrial services for an hour each week. Obviously that would be an absurd result, but nevertheless feasible under the Eighth's and Ninth Circuit's reasoning. For these reasons, this Court does not find these precedents persuasive.

applied" challenge begs the question: would the statute be unconstitutional "if applied literally to the facts of the case." *United States Polouizzi*, 697 F. Supp. 2d at 387 ("Factual context and the defendant's circumstances are critical."). Even if this Court was to uphold the Adam Walsh Act against Karper's facial constitutional due process challenge, we would, nonetheless, find that the Amendments "as applied" to Karper are unconstitutional for all of the same reasons stated above. Here, we have an accused who resides with his family, was employed for most of his adult life until recently, has attended college, has no adult convictions, and no issues with alcohol, drugs, nor a history of mental or emotional disturbances. The Government did not proffer any argument that this young man was a risk of flight or a danger, but rather defaulted to the notion that the Adam Walsh Act is controlling under these circumstances. Ostensibly, there is little, if any, concern Karper would not appear or pose a danger to the community that no other condition or combination of conditions, short of electronic monitoring, would suffice in ensuring the Court. In the scheme of things, Karper matches favorably with the factors the Court should consider in setting conditions of release. *See* 18 U.S.C. § 3142(g). If charged with any other federal crime, for all intents and purposes, Karper would have been an appropriate candidate to be released on his own recognizance or possibly on a rather nominal bond, along with some pretrial conditions of release other than curfew or electronic monitoring. But for the Adam Walsh Act and its irrebutable presumption as to the imposition of certain conditions such as a curfew and electronic monitoring, Karper would have been allowed to argue and present proof that it would be more fitting for him to be placed on "less restrictive conditions," or, for that matter, for this Court to consider less restrictions as strongly urged by 18 U.S.C. § 3142(c)(1)(B). When enacting the Adam Walsh Act, Congress did not make any empirical finding that persons charged with the possession of child pornography are more likely

to flee or continue to harm children, if released.  There was no assessment nor statistical finding of a greater risk of future crimes by these defendants at this initial juncture of a prosecution.  Without such a showing, the need for such a burden upon an accused's fundamental rights is unjustified, especially, when someone like Karper presents no risk.  Because he was not afforded an opportunity to be heard in conjunction with the absence of judicial review and independent discretion, Karper has been unfairly and unconstitutionally subjected to these mandatory provisions without exception, just like all others, no matter their background, who are charged with the receipt and/or distribution of child pornography.  Hence, the application of this statute unconstitutionally deprives Karper of protected due process right under these facts.  *Field Day, LLC v. County of Suffolk*, 463 F.3d 167, 174-75 (2d Cir. 2006).

### B. Eighth Amendment Prohibition against Excessive Bail

The Eighth Amendment to the United States Constitution states, in part, that, "excessive bail shall not be required."  U.S. CONST. amend VIII.  The fixing of bail must be based on the salient intent to assure the presence of an accused when required during a criminal prosecution.  In this respect, the Supreme Court had defined excessive bail as "bail set at a figure higher than an amount reasonably calculated to fulfill [its] purpose."  *Stack v. Boyle*, 342 U.S. 1, 5 (1951).[7]  The notion that conditions of release may fall within the context of the Eighth Amendment was expressed by the Supreme Court when noting "that the Governments's proposed conditions of release or detention not be excessive in light of the perceived evil."  *United States v. Salerno*, 481 U.S. at 754; *see also*

---

[7] The Supreme Court also noted that "[u]nless this right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose it meaning."  *Stack v. Boyle*, 342 U.S. 1, 4 (1951). The Court later added that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."  *United States v. Salerno*, 481 U.S. 739, 755 (1987).

*United States v. Arberger*, 592 F. Supp. 2d at 604-05; *United States v. Polouizzi*, 697 F. Supp. 2d at 388 ("Excess[ive] must be more than de minimus."). In this respect, bail and/or conditions of release  should not be imposed beyond what is necessary to serve the purpose of ensuring appearance in court or protecting the welfare of the community against future dangerousness.

As *Salerno* has made clear, even in light of the government's compelling interest, the Eighth Amendment does not categorically prohibit detention nor require that all arrestees must be released on bail. 481 U.S. at 754-55. *Salerno* also instructs us that a statute is unconstitutional on its face only if there are a set of facts or circumstances under which it would be valid. *Id*. at 745. It is readily conceivable that some arrestees who are charged with possessing and receiving child pornography, weighing all of the § 3142(g) factors during a hearing, may be detained or subject to a curfew along with electronic monitoring. Surely after having the benefit of an adversarial hearing and exercising his due process rights to challenge the Government's proffer, an accused may be found to be either a serious risk of flight or a danger to the community, or both. Detention or stronger conditions, such as electronic monitoring, may be warranted. Indubitably, the mandated conditions of the Adam Walsh Act may be sanctioned. Therefore, a facial challenge to the Adam Walsh Act, pursuant to the Eighth Amendment, must fail. This does not end our analysis because the Act may be unconstitutional under the Eighth Amendment "as-applied" to Karper.

If liberty is the norm, *see supra* note7, and the Bail Reform Act mandates that an accused be released on the "least restrictive" conditions, then a determination as to what conditions are to be imposed should be meted out in such a way as to satisfy the government's legitimate objectives of protecting the public without trampling upon the protected liberties of the accussed. In essence, the "as-applied" doctrine revolves around a court having discretion to implement the appropriate

conditions of release based upon circumstances before it.  Magistrate Judge James C. Francis, IV, observed, "[i]f the Excessive Bail Clause has any meaning, it must preclude bail conditions that are (1) more onerous than necessary to satisfy legitimate governmental purposes and (2) result in deprivation of the defendant's liberty." *United States v. Arzberger*, 592 F. Supp. 2d at 605 (citing *Stack v. Boyle*, 341 U.S. 1).  Therefore, the relinquishment of constitutionally protected rights, such as the freedom of movement, on conditions that are more than necessary to satisfy legitimate governmental interests would constitute excessive bail in violation of the Eighth Amendment.  *Id.* at 605-06;   *United States v. Polouizzi*, 697 F. Supp. 2d at 390 ("Bail conditions are unconstitutionally excessive if they impose restraints that are more than necessary to achieve the government's interest[,] . . . preventing risk of flight and danger to society or children.").

By mandating the onerous conditions of curfew and electronic monitoring,[8] which restrict an accused's right to move freely, without an adversarial hearing, this combination of conditions unnecessarily and excessively imposes restriction to meet the compelling governmental interest and is plainly intrusive and violative of the Eighth Amendment, at least as it applies to Karper.  These intrusions are not incremental as the Government suggests. They are concrete and immediate.  As stated above, Karper poses no risk of flight nor any danger to the community exclusive of the nature of the charges lodged against him.  As a matter of constitutional significance, the mere fact that a person is charged with a crime, does not "give rise to any inference that he is more likely than any other citizen to commit a crime if released from custody." *United States v. Scott*, 450 F.3d 863, 874

---

[8] The Honorable Jack B. Weinstein, Senior United States District Judge, attested to the fact that "[r]equired wearing of an electronic bracelet, every minute of every day, with the government capable of tracking a person not yet convicted as if he were a feral animal would be considered a serious limitation on freedom by most liberty-loving Americans." *United States v. Polouizzi*, 697 F. Supp. 2d 381, 389 (E.D.N.Y. 2010).

(9th Cir. 2006).  After all, an accused is presumed innocent until proven guilty.  *Id*.  The Government did not proffer that Karper had physically harmed a minor or would in the future or even intimated any other inappropriate behavior by him, except pointing to the nature of the charge.  His computer, which had the purported child pornography, had been seized and he was directed not to use a computer or employ any internet capabilities, without first informing pretrial services.  These conditions, alone, eliminate the possibility of potential on-going harm to children by Karper.  In essence he poses no risk to society.  Furthermore, there are other less restrictive conditions that may further meet the necessary objectives of the statute, without being excessive. *See supra* note 1. For example, Karper was directed not to commit any crime, nor re-offend, during the pendency of this prosecution.  This condition sufficiently meets the government's compelling interest as it relates to future dangerousness. The mandatory impositions of specific conditions upon "all defendants charged with a certain crime, regardless of the personal characteristics of each defendant and circumstances of the offense, without any consideration of factors demonstrating that those same legitimate objectives cannot be achieved with less onerous release conditions, will subject a defendant, for whom such conditions are . . . unnecessary, to excessive bail[.]" *United States v. Crowell*, 2006 WL 3541736, at *7 (W.D.N.Y. Dec. 7, 2006).  But for the Adam Walsh Act, Karper would not be subjected to conditions of curfew and electronic monitoring, and under these circumstances, this Court finds both conditions to be excessive as applied to Karper when measured against the perceived evil.

## IV.  CONCLUSION

In summary, and for the reasons stated above, the Court finds that the Adam Walsh Act requirements violate the Due Process Clause of the Fifth Amendment as both facially and "as-

applied" unconstitutional.  The Court further finds that the Adam Walsh Act violates the Excessive

Bail Clause of the Eighth Amendment to the United States Constitution only "as applied" to Karper.

Accordingly, it is hereby

       **ORDERED**, that David R. Karper's Motion to Strike Conditions of Pretrial Release, Dkt.

No. 7, is **GRANTED;** and it is further

       **ORDERED**, that Karper's Conditions of Release are modified to the extent that home

detention and electronic monitoring shall be discontinued forthwith.  All other Conditions of Release

shall remain in effect.

       **IT IS SO ORDERED**.

August 10, 2011
Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge

*-20-*