**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF NEW YORK**

_____

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **MEMORANDUM OF LAW IN OPPOSITION TO GOVERNMENT'S** |
| **v.** | **MOTION FOR REVIEW AND REVOCATION OF MAGISTRATE** |
| **DAVID R. KARPER, JR.,** | **JUDGE'S DECISION AND ORDER** |
| **Defendant.** | **Docket No. 11-CR-103 (TJM)** |

_____

## PRELIMINARY STATEMENT

David Karper, by and through counsel, submits this memorandum of law in opposition to

the motion of the government, filed on August 26, 2011, seeking review and revocation of the

Memorandum-Decision and Order of Hon. Randolph F. Treece, U.S. Magistrate Judge, dated

August 10, 2011.  Mr. Karper opposes the government's motion on the grounds that the

Memorandum-Decision and Order properly granted Mr. Karper's motion to strike the mandatory

conditions of pretrial release requiring home detention with electronic monitoring.  Magistrate

Judge Treece correctly held that the mandatory imposition of those conditions, as required

pursuant to the Bail Reform Act of 1984 as amended by the Adam Walsh Act, violates the Due

Process Clause of the Fifth Amendment to the United States Constitution on its face and as

applied to Mr. Karper and violates the Eight Amendment's prohibition on excessive bail as

applied to Mr. Karper.

Upon the District Court's review of the Memorandum-Decision and Order of Magistrate

Judge Treece, Mr. Karper asks this Court to uphold and affirm the determination of Magistrate

1

Judge Treece and hold that the mandatory imposition of the home detention/curfew and electronic monitoring conditions violates the Due Process Clause of the Fifth Amendment on its face and as applied to Mr. Karper and violates the Eight Amendment's prohibition on excessive bail as applied to Mr. Karper.

## PROCEDURAL BACKGROUND

On March 17, 2011, the defendant, David Karper, made his initial appearance before U.S. Magistrate Judge Treece for an arraignment on an indictment filed on March 2, 2011.  ECF Minute Entry of 3/17/11.  Mr. Karper, to whom a summons had been issued following the indictment, voluntarily appeared at the scheduled time for the arraignment.

Count 1 of the indictment charged receipt of child pornography between in or about March 2010 and November 11, 2010, based upon Mr. Karper's then-alleged receipt of computer images of child pornography via the internet.  Count 2 charged possession of child pornography on November 11, 2010 based upon Mr. Karper's then-alleged possession of computer images of child pornography on a computer.  See, Indictment (ECF Docket No. 1).

At the initial appearance and arraignment, Mr. Karper was advised of his rights and pleaded not guilty to the indictment.  At that same appearance, the government recommended Mr. Karper's pretrial release subject to the conditions proposed by the Pretrial Services Office, which included, as relevant here, home detention with electronic monitoring.  Id.  Mr. Karper, through counsel, joined in the recommendation of release subject to the conditions proposed by the Pretrial Services Office, with the exception of the proposed conditions of home detention with electronic monitoring.  Id.  With respect to those conditions, the defense objected to the imposition of those conditions and requested this opportunity to challenge the mandatory

imposition of those conditions, as required pursuant to 18 U.S.C. §3142(c)(1)(B).  The Court

granted the defense request and set deadlines for the defense to file a motion challenging those

conditions and for the government to respond.  <u>See</u>, ECF Text Order of 3/17/11.

Mr. Karper filed his motion to strike those conditions on March 31, 2011.  ECF Docket

Entry No. 7.  The government filed its response to the motion on April 27, 2011.  ECF Docket

Entry No. 9.  Mr. Karper filed a reply to the government's response on April 28, 2011.  ECF

Docket Entry No. 10.

Magistrate Judge Treece's Memorandum-Decision and Order was issued on August 10,

2011 and, upon holding that the mandatory conditions at issue here are unconstitutional, ordered

that home detention and electronic monitoring be discontinued forthwith.  ECF Docket Entry No.

13.  On August 11, 2011, the government requested that Magistrate Judge Treece stay the

execution of the Memorandum-Decision and Order pending an appeal to be filed by the

government, ECF Docket Entry No. 14, which Magistrate Judge Treece granted by text order of

August 12, 2011.  ECF Docket Entry dated 8/12/11.

Thereafter, Magistrate Judge Treece issued an order on August 15, 2011 modifying Mr.

Karper's conditions of release in a way intending to comply with the mandatory Adam Walsh

Act conditions, substituting a curfew from midnight to 6 a.m. daily in lieu of more restrictive

home detention, along with continuing electronic monitoring.  ECF Docket Entry No. 17.

The government's appeal of the Memorandum-Decision and Order of 8/10/2011 ensued.

ECF Docket Entry No. 18.

Thereafter, on September 13, 2011, a change-of-plea proceeding was conducted before

this Court at which Mr. Karper pleaded guilty to the indictment.  Following the plea, this Court

entered its own order releasing Mr. Karper subject to the same conditions imposed by Magistrate

Judge Treece, as modified by his order of 8/15/2011.  ECF Docket Entry dated 9/13/11.  Mr.

Karper did not and does not oppose the conditions imposed by this Court post-plea.  At the plea

proceeding, the government asked the Court immediately to "reverse" Magistrate Judge Treece's

decision, which the Court then declined to do in the absence of full briefing, and advised the

Court that, notwithstanding the District Court's new order of release post-plea, the government

would persist in its appeal of Magistrate Judge Treece's pre-trial release decision of 8/10/11.

## STATEMENT OF FACTS

**Release Factors in Mr. Karper's Case**.

### *Nature and circumstances of the offense*

The indictment in Mr. Karper's case charged a fairly typical case of receipt and

possession of child pornography.  The allegations in the indictment describe receipt of computer

images of child pornography via the internet and the possession of the images received from the

internet.  The information available to the parties at the time of Mr. Karper's motion to strike

conditions, based upon preliminary discovery provided by the government as of that time,

revealed that law enforcement interest in Mr. Karper stemmed from a common peer-to-peer file

sharing investigation during which police alleged to have been able remotely to observe images

present on a particular computer and then to identify Mr. Karper as an individual responsible for

that computer.  From that discovery and informal discussions with AUSA Sciocchetti at the time

of the motion to strike conditions, it was clear that the government would contend that evidence

obtained following the search of Mr. Karper's computer, including statements alleged to have

been attributable to Mr. Karper, corroborated the results of the peer-to-peer file sharing

investigation and established Mr. Karper's receipt and possession of child pornography.

The case did not involve allegations that Mr. Karper was involved, either immediately in connection with the instant case or otherwise during his history, in the production of child pornography or any other form of illegal or inappropriate contact with minors, whether directly or indirectly through electronic communications with minors, solicitations of minors or dissemination of any illegal or inappropriate materials to minors.

*History and characteristics of Mr. Karper*

As reflected in the pretrial services report, Mr. Karper is a 29-year-old man who resides in Schoharie County.  Although he was born in Connecticut and resided for a time in Ohio, he has been raised since 9 years old in Cobleskill, living in the same home with his parents for the last 20 years, except for the brief time when he attended college.  He continues now to reside with his parents in their home.  Members of his extended family also reside in the area surrounding the Capital Region.

During his adult life, he has been regularly employed at various jobs around his home. He has been unemployed since June of 2010 and has received unemployment insurance benefits.

He is in good physical health and suffers from no mental health problems.  He consumes alcohol only rarely and has never had a problem with alcohol.  He has not used marijuana since experimenting with it briefly in high school more than 10 years ago.  He has never used any other drugs.  He has never needed substance or alcohol abuse treatment.

As of the time of the initial appearance, Mr. Karper's prior involvement with the criminal justice system was limited to one event occurring 5 days after his 16th birthday, nearly 14 years ago.  That event was reflected in the pretrial services report.  Mr. Karper and a same-aged friend

wheeled an old, broken down motorcycle out of what appeared to be an old, run-down, abandoned barn and took it to Mr. Karper's home.  Mr. Karper's father ultimately learned what had happened and told the boys to return the motorcycle to where they found it.  The owner of the barn and motorcycle encountered them trying to return the motorcycle.  They were charged in a case that was referred to family court.  The case was disposed of with Mr. Karper serving 1 year of probation supervision.

Mr. Karper had no criminal convictions at the time of the motion to strike conditions.

Mr. Karper initially was arrested and charged in state court (Town of Seward in Schoharie County) on the same conduct underlying the instant indictment.  After a brief period of detention, Mr. Karper was released on bond.  Following Mr. Karper's release, he had been scheduled to appear in the Town of Seward Justice Court four or five times.  He had appeared in state court each and every time.  Mr. Karper was informed of the indictment in this case in advance of the arraignment, and appeared as required under his own power.

**Pretrial Services' Recommendation, and the Conditions of Mr. Karper's Release.**

Based upon all of the facts and circumstances learned during the pretrial services investigation and set forth in the pretrial services report, the pretrial services officer recommended that Mr. Karper be release on personal recognizance with U.S. Pretrial Services supervision[1], with the following conditions:

1.      Maintain or actively seek employment.
2.      Obtain no passport.

---

[1]The pretrial services report did not base a determination about Mr. Karper's risk of flight or dangerousness to the community on any factor or circumstance particular to him or his history; rather, to the extent the report opined on risk of flight or dangerousness, it was based exclusively on the nature of the charge.

3.    Restrict travel to the Northern District of New York unless approved by Pretrial Services or the Court.

4.    Remain at an authorized address as approved by Pretrial Services or the Court.

5.    Participate in one of the following home confinement program components and abide by all the requirements of the program which... will... include location and/or monitoring technology[:]
      **Home Detention.**  The defendant is restricted to the defendant's residence at all times except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities as pre-approved by Pretrial Services or the Court.

6.    Report within 72 hours, to Pretrial Services or the Court any contact with any law enforcement personnel, including, but not limited to, any arrest, questioning, or traffic stop.

7.    The defendant shall not use or possess any computer or any other device with online capabilities....

8.    The defendant shall not frequent places where persons under the age of 18 are likely to congregate....

9.    The defendant shall not have any direct contact with a person under the age of 18....

10.   The defendant shall not subscribe to or use any Internet services at any location....

11.   The defendant shall not utilize any Internet site directly or through another person....

The government made no separate proffer of circumstances suggesting that Mr. Karper was a risk of flight or that he presented a danger to the community.  The government recommended release on the conditions proposed by the pretrial services officer.  Mr. Karper joined in that recommendation except to the extent that he objected to the imposition of "home detention" with "location and/or monitoring technology" (the 5th and 6th numbered conditions above).

The Magistrate Judge imposed each of the conditions proposed by the pretrial services

officer and added the following conditions[2]:

> Refrain from... excessive use of alcohol.

> Refrain from any use or unlawful possession of a narcotic drug and other controlled substances....

> The defendant shall not possess or use a computer or Internet capable device without the approval of Pretrial Services or the Court.

See, Order Setting Conditions of Release, ECF Docket No. 2.

The Court acknowledged the defense objections to the mandatory imposition of home detention with electronic monitoring, from which the motion to strike conditions ensued.

## ARGUMENT

## I.  THE GOVERNMENT'S APPEAL MAY BE SUBJECT TO DISMISSAL AS MOOT.

Since the issuance of Magistrate Judge Treece's decision on pretrial detention, Mr. Karper has changed his plea and now is subject to the District Judge's order, post-plea, releasing Mr. Karper on the same conditions to which Mr. Karper was previously subject.  Mr. Karper does not oppose those conditions post-plea.

Insofar as the government seeks review of a decision of the Magistrate Judge which no longer affects them in this case, the appeal is moot, see, United States v. Brandau, 578 F.3d 1064, 1067 (9th Cir. 2009), unless the government can demonstrate that the issue of the constitutionality of the Adam Walsh Act amendments to the Bail Reform Act is "capable of

---

[2]The conditions ultimately imposed by the Court included specific reference to "*electronic monitoring* or other location verification system," whereas the Pretrial Services Office's proposal within the pretrial services report referred to "location and/or monitoring technology."  That distinction appears to be the result of the Court's and Pretrial Services Office's use of slightly different templates.

repetition, yet evading review." <u>See</u>, <u>e.g.</u>, <u>Gerstein v. Pugh</u>, 420 U.S. 103, 111, n.11 (1975)

(Respondent, who was arrested without a warrant and charged by information, challenged his

detention without an opportunity for probable cause determination; petition was not moot after

respondent was already convicted when the issue was capable of repetition yet evading review).

The government's appeal was asserted prior to Mr. Karper's change of plea and does not

address the issue of mootness.  At the change of plea, the government informed the Court of its

position that the government's appeal still must be decided, without articulating a basis for that

position.

In order for the government's appeal not to be subject to dismissal as moot, the

government should be required to establish whether the issue on appeal is capable of repetition

yet evading review.

## II.      THE DISTRICT COURT SHOULD AFFIRM THE DECISION OF THE MAGISTRATE JUDGE WHEN THE ADAM WALSH ACT AMENDMENTS MANDATING A CURFEW AND ELECTRONIC MONITORING VIOLATE THE FIFTH AND EIGHTH AMENDMENTS TO THE CONSTITUTION.

### Statutory Framework

On July 27, 2006, Congress enacted the Adam Walsh Child Protection and Safety Act of

2006, which amended, *inter alia*, 18 U.S.C. § 3142(c) to read as follows:

**(c) Release on conditions. – (1)** If the judicial officer determines that the release
described in subsection (b) of this section will not reasonably assure the
appearance of the person as required or will endanger the safety of any other
person or the community, such judicial officer shall order the pretrial release of
the person–

* * * *

**(B)** subject to the least restrictive further condition, or a combination of
conditions, that such judicial officer determines will reasonably assure the
appearance of the person as required and the safety of any other person and the

9

community....[3]

* * * *

**In any case that involves a minor victim under... 2252A(a)(2)... of this title...,
any release order shall contain, at a minimum, a condition of electronic
monitoring and each of the conditions specified at paragraphs (iv), (v), (vi),
(vii), and (viii).[4]**

18 U.S.C. § 3142(c)(1)(B) (2006) (as amended) (emphasis added).  The condition specified at

subparagraph vii is "comply with a specified curfew."  Here, home detention was proposed by

the pretrial services office and recommended by the government as an equivalent of the

mandatory condition of curfew[5].  That condition, along with electronic monitoring, are the only

mandatory conditions challenged by Mr. Karper and at issue here.

Those amendments to the Bail Reform Act, to the extent they require a court to impose

the above-referenced conditions of release in every case without any discretion to do otherwise,

and to the extent they required the magistrate judge to impose those conditions in Mr. Karper's

case notwithstanding the individual circumstances of his case, violate the United States

---

[3]Subparagraph B thereafter lists 14 permissible conditions for discretionary consideration
by the court.

[4]Among the 14 otherwise discretionary conditions are the following, which are made
mandatory by the Adam Walsh Act Amendments in cases involving the enumerated offenses:

> (iv) abide by specified restrictions on personal associations, place
> of abode, or travel;
> (v) avoid all contact with an alleged victim of the crime and with a
> potential witness who may testify concerning the offense;
> (vi) report on a regular basis to a designated law enforcement
> agency, pretrial services agency, or other agency;
> (vii) comply with a specified curfew;
> (viii) refrain from possessing a firearm, destructive device, or other
> dangerous weapon . . . .

[5]For the purposes of this argument, curfew and home detention are one and the same.

10

Constitution.  Magistrate Judge Treece appropriately struck those conditions and held that they

violate the Fifth and Eighth Amendments to the Constitution.

**A.      The Conditions of Release Mandated by the Adam Walsh Act Violate the Defendant's Right to Procedural Due Process under the Fifth Amendment to the United States Constitution.**

**1.      The Adam Walsh Act amendments are invalid on their face.**

The Due Process Clause of the Fifth Amendment provides that "No person shall ... be

deprived of life, liberty, or property, without due process of law."  U.S. Const. Amend V.

"[D]ue process is flexible and calls for such procedural protections as the particular

situation demands." Morrissey v. Brewer, 408 U.S. 471, 481 (1972).  "When evaluating a

procedural due process claim, considered are: (1) whether there is a constitutionally protected

liberty interest at stake, and, if so (2) whether there are adequate procedural safeguards in place

to protect it."  United States v. Polouizzi, 697 F. Supp. 2d 381, 387-388 (E.D.N.Y. 2010), citing,

Kapps v. Wing, 404 F.3d 105, 112 (2d Cir.2005).

In determining whether procedural safeguards are adequate, the standard set forth by the

Supreme Court in Mathews v. Eldridge requires balancing of: (1) "the private interest that will

be affected by the official action," (2) "the risk of erroneous deprivation of such interest through

procedures used," and (3) "the Government's interest, including the function involved and the

fiscal and administrative burdens that the additional or substitute procedural requirement would

entail."  Mathews v. Eldridge, 424 U.S. 319, 321 (1976).

"It is an established part of our constitutional jurisprudence that the term "liberty" in the

Due Process Clause extends beyond freedom from physical restraint. . . . the interest

denominated as a 'liberty' [must not only] be 'fundamental' but also . . . an interest traditionally

protected by our society.  Michael H. v. Gerald D., 491 U.S. 110, 121-22 (1989) (internal

quotations on citations omitted).

    In his recent decision on the instant issue, Judge Weinstein in the Eastern District of New

York analyzed the liberty interest implicated by the conditions of release at issue here and the

risk of erroneous deprivation associated with the imposition of those conditions:

>     There is a valid liberty interest in freedom of movement that is arbitrarily
> and substantially reduced by the Adam Walsh Act. The right to travel from one
> place to another free of hindrances is a well established aspect of constitutionally
> protected private freedom. See, Kolender v. Lawson, 461 U.S. 352, 358, 103 S.Ct.
> 1855, 75 L.Ed.2d 903 (1983); Williams v. Fears, 179 U.S. 270, 274, 21 S.Ct. 128,
> 45 L.Ed. 186 (1900); Ramos v. Town of Vernon, 353 F.3d 171, 172 (2d Cir.2003)
> (holding a town council's curfew for juveniles unconstitutional, noting that the
> "right to free movement is a vital component of life in an open society"); Spencer
> v. Casavilla, 903 F.2d 171, 174 (2d Cir.1990) ("[T]he Constitution ... protects the
> right to travel freely within a single state"). See also, e.g., Arzberger, 592 F.Supp.
> 2d at 600-01; Torres, 566 F.Supp.2d at 597 ("[A]n individual's right to freedom of
> movement among locations and the right to remain in a public place are
> fundamental to our sense of personal liberty protected by the Constitution.");
> Smedley, 611 F.Supp.2d at 975 ("[L]iberty pending trial is the private interest at
> issue, and that interest is significant.").
>     A curfew, by its definition, restricts the ability of the defendant to move
> about in a public area during substantial periods of time. The condition of a
> mandatory curfew with an associated electronic monitoring bracelet imposed
> pursuant to the Adam Walsh Act substantially constrains freedom-of-movement
> liberty. See, e.g., Arzberger, 592 F.Supp. 2d at 600; Smedley, 611 F.Supp.2d at
> 975; Merritt, 612 F.Supp.2d at 1079; Torres, 566 F.Supp.2d at 597. But cf.
> Gardner, 523 F.Supp.2d at 1032.
>     Electronic monitoring devices that inhibit straying beyond spatial home
> property limits, like those used to restrain pet dogs, are intrusive. Their
> requirement, when mandated and unnecessary, may constitute excessive bail in
> particular cases. See, e.g., id. at 1031-32 (constitutional finding limited to form of
> electronic monitoring); Torres, 566 F.Supp.2d at 599 n. 2 (construing Gardner as
> disapproving curfew plus electronic monitoring). Any form of mandatory curfew
> with electronic monitoring may infringe the strong liberty interest in freedom of
> movement. See Arzberger, 592 F.Supp. 2d at 600; Smedley, 611 F.Supp.2d at
> 975; Merritt, 612 F.Supp.2d at 1079; Torres, 566 F.Supp.2d at 597.
>     Mandatory electronic monitoring with a curfew provides near certainty of
> erroneous deprivation of defendant's liberty interest in *some* cases. As one court
> noted: "[ **I]n the absence of any findings by Congress as to the efficacy of a**

> **curfew requirement, it cannot be assumed that courts would generally require a curfew for defendants charged with child pornography offenses if such a condition were discretionary rather than mandatory**." <u>Arzberger</u>, 592 F.Supp. 2d at 601 (citations omitted).

<u>United States v. Polouizzi</u>, 697 F. Supp. 2d 381, 390-391 (E.D.N.Y. 2010) [emphasis added].

Although the Government's interest in the safety of the community and of children is important, removing from judicial consideration whether a curfew with electronic monitoring is necessary to secure the safety of the community and of children in no way furthers that interest. <u>United States v. Torres</u>, 566 F. Supp. 2d 591, 598 (W.D. Tex. 2008).  As noted by U.S. Magistrate Judge Francis in the Southern District of New York, the governmental "interest is in no way diminished by conducting an individual evaluation of the need for a curfew."  <u>United States v. Arzberger</u>, 592 F. Supp. 2d 590, 601 (S.D.N.Y. 2008).

The vast majority of courts to have addressed the constitutionality of a mandatory movement-restraining condition like a curfew or home detention with electronic monitoring have ruled that such conditions violate due process.  <u>See</u>, <u>United States v. Merritt</u>, 612 F.Supp.2d 1074, 1080 (D.Neb.2009) (imposition of a curfew and electronic monitoring as conditions of release solely on the basis of the Adam Walsh Act violated the defendant's right to procedural due process); <u>United States v. Rueb</u>, 612 F.Supp.2d 1068, 1074 (D.Neb.2009) (same); <u>United States v. Smedley</u>, 611 F.Supp.2d 971, 977 (E.D.Mo.2009) (Adam Walsh Act's amendments violate procedural due process on their face); <u>United States v. Arzberger</u>, 592 F.Supp.2d 590, 601 (S.D.N.Y.2008) (Adam Walsh Act's amendments violate the Due Process Clause of the Fifth Amendment on their face); <u>United States v. Torres</u>, 566 F.Supp.2d 591, 599, 602 (W.D.Tex.2008) (Adam Walsh Act's amendments violated the Due Process Clause on their face and also violated the Excessive Bail Clause as applied to the defendant); <u>United States v.</u>

13

Vujnovich, No. 07-20126-01-CM-DJW, 2008 WL 687203, at *2 (D.Kan. Mar. 11, 2008)
(mandatory imposition of electronic monitoring on defendant violated his right to procedural due
process); United States v. Crowell, No. 06-M-1095, 2006 WL 3541736, at *7, *10 (W.D.N.Y.
Dec. 7, 2006) (Adam Walsh Act Amendments violate the Eighth Amendment's prohibition
against excessive bail and the Fifth Amendment's guarantee of procedural due process).  But see,
United States v. Kennedy, 327 Fed.Appx. 706 (9th Cir. 2009) (finding "no constitutional
infirmity in the Adam Walsh Act," where it was *"constru[ed] ... to require the district court to
exercise its discretion,* to the extent applicable, *in applying the mandatory release conditions")*
(emphasis added); United States v. Cossey, 637 F.Supp.2d 881 (D. Mont. 2009) (same); United
States v. Gardner, 523 F.Supp.2d 1025 (N.D.Cal.2007) (holding that Adam Walsh Act does not
violate procedural due process, require excessive bail, or violate separation of powers); but cf.
United States v. Stephens, 594 F.3d 1033, 1037 (8th Cir.2010) (reversing district court decision
holding that Adam Walsh Act violates Fifth Amendment's guarantee of procedural due process,
where record was "devoid of any factual context" about the defendant or his circumstances).

 "Considering [the three Mathews factors], the Adam Walsh Act's amendments to the Bail
Reform Act of 1984 are unconstitutional on their face....  No defendant charged under these
amendments is given the right or opportunity to challenge the required pretrial conditions of
release.  These conditions are mandatory, and foreclose any individualized judicial consideration
of the type of factors outlined in Salerno [upholding the Bail Reform Act at its inception]."
United States v. Smedley, 611 F. Supp. 2d 971, 976 (E.D. Mo. 2009).

 The government relies on an incorrect reading of the Supreme Court's decision in
Salerno for its argument against the facial invalidity of the Adam Walsh Act amendments.  The

14

Court in <u>Salerno</u> stated that in order to prevail on "[a] facial challenge to a legislative Act... the

challenger must establish that no set of circumstances exists under which the Act would be

valid." <u>United States v. Salerno</u>, 481 U.S. 739, 745 (1987).  In <u>Salerno</u>, the Court addressed a

claim that the Bail Reform Act, which allowed for pretrial detention on the basis of the

likelihood of a defendant to commit future crimes if released, violated due process on its face.

The Court rejected the procedural due process claim, stating:

> Under the Bail Reform Act, the procedures by which a judicial officer
> evaluates the likelihood of future dangerousness are specifically designed to
> further the accuracy of that determination.  Detainees have a right to counsel at
> the detention hearing. 18 U.S.C. § 3142(f). They may testify in their own behalf,
> present information by proffer or otherwise, and cross-examine witnesses who
> appear at the hearing. *Ibid.* The judicial officer charged with the responsibility of
> determining the appropriateness of detention is guided by statutorily enumerated
> factors, which include the nature and the circumstances of the charges, the weight
> of the evidence, the history and characteristics of the putative offender, and the
> danger to the community. § 3142(g). The Government must prove its case by
> clear and convincing evidence. § 3142(f). Finally, the judicial officer must
> include written findings of fact and a written statement of reasons for a decision
> to detain. § 3142(i). The Act's review provisions, § 3145(c), provide for
> immediate appellate review of the detention decision.
> We think these extensive safeguards suffice to repel a facial challenge.

<u>Id.</u> at 751.

The government offers a misleading statement of the <u>Salerno</u> standard in its effort to

defeat the facial challenge by plucking a useful clause out of context and ignoring the all-

important operative language.  The government contends that <u>Salerno</u> would dictate, "So long as

the Court finds that the pretrial release conditions imposed by the Adam Walsh Act are

appropriate to *'at least some [persons] charged with crimes,'* the facial challenge to the Act

cannot succeed."  Government's Memorandum in Support at p. 10 [emphasis added].  <u>Salerno</u>

does not say that.  The full relevant excerpt from <u>Salerno</u> is as follows:

15

> Finally, we may dispose briefly of respondents' facial challenge to the *procedures of the Bail Reform Act*. To sustain them against such a challenge, *we need only find them "adequate to authorize the pretrial detention of **at least some [persons] charged with crimes**,"*... whether or not *they* might be insufficient in some particular circumstances. We think *they* pass that test. As we stated in *Schall,* "there is nothing inherently unattainable about a prediction of future criminal conduct."

Id. at 751 [internal citations omitted][emphasis added].  Salerno determined that because the full panoply of "procedures" provided in the Bail Reform Act was "adequate" to allow for pretrial detention of "at least some [persons] charged with crimes," then the Bail Reform Act was constitutional on its face.  Critical to that determination was that "extensive safeguards", which were "specifically designed to further the accuracy of [the] determination [of future dangerousness]," were provided in the Bail Reform Act.  Id. at 751.

So the question under Salerno is not, as the government contends, whether there are certain cases where a judge might determine that those restrictive conditions should be imposed.[6] The same conditions were available for imposition on such a discretionary basis before the Adam Walsh Act amendments were enacted, and their availability clearly would not raise a constitutional question under Salerno when the full panoply of Bail Reform Act procedural due process rights remained available.  The question, instead, would be: Is there a way to view the

---

[6]An unavoidable question at the heart of the government's rationale for why a facial challenge should be rejected (a court might determine that there may be 'at least some [persons] charged with crimes' who should be subject to the most restrictive conditions), is: How would the determination reliably be made that a certain defendant requires that those most stringent conditions be imposed?  Based strictly upon the indictment?  Based upon a government proffer with no opportunity for the defense to contest it?  Based upon government witness testimony with no opportunity for the defense to cross-examine that witness?  If the determination that such conditions will be required in some cases needs to be a reliable one, the complete absence in each and every case of due process rights precludes such reliability.  If the determination would not need to be reliable, the constitutional discussion is entirely pretense.

whole of the Adam Walsh Act amendments–not just the conditions they refer to but also the part that mandates their imposition–such that the <u>mandatory</u> imposition of those conditions in <u>every single case</u> of an enumerated offense, with <u>no</u> opportunity to challenge their imposition <u>in any case</u>, is somehow constitutional?  There clearly is none.  The rejection of a facial challenge to the amendments under the <u>Salerno</u> standard could not be based on the possibility that restrictive conditions would be necessary or appropriate in discrete cases but instead would have to be based on a determination that the complete elimination of judicial discretion and due process rights–the <u>mandatory</u> imposition of those most stringent conditions–would <u>ever</u> be adequate.

The government criticizes Magistrate Judge Treece's rejection of the authority cited by the government for why a facial challenge must fail.  That authority suffers from the same incorrect application of the <u>Salerno</u> standard.  <u>See</u>, <u>United States v. Peeples</u>, 630 F.3d 1136 (9th Cir. 2010) ("Peeples's facial challenge to the Walsh Act fails because he cannot establish that a curfew or electronic monitoring would be inappropriate for all defendants charged with knowingly receiving child pornography.") <u>and</u> <u>United States v. Stephens</u>, 594 F.3d 1033, 1038 (8th Cir. 2010) ("Stephens' facial challenge to § 216 fails because Stephens cannot establish there are no child pornography defendants for whom a curfew or electronic monitoring is appropriate.").  The appropriateness of the discretionary imposition restrictive conditions in imaginable cases–say nothing about how a court were to flesh out the circumstances dictating how appropriate it may be with no hearing–does not save the <u>mandatory</u> imposition in all cases.

The government also contends that the doctrine of constitutional avoidance should defeat a facial challenge.  That argument must fail.  The government asks the Court to construe the Adam Walsh Act amendments as granting such great discretion to the magistrate judge in the

imposition of mandatory restrictions that they "do not foreclose an individualized judicial consideration."  Government's Memorandum in Support at p. 11.  The argument does not pass the laugh test.  More importantly, the government's argument and the authority upon which it relies ignore the clearly defined liberty interest of free movement which is necessarily infringed by the imposition of mandatory movement restrictions, regardless of how much "ample leeway", in the government's fantastic description of the statute, a detention court might have to " to define *the manner* in which the mandatory conditions of a curfew and electronic monitoring are imposed on each particular defendant."  Id.

No court cited by the government to have rejected a facial challenge to the Adam Walsh Act amendments on constitutional avoidance grounds has conducted a legitimate application of the Due Process balancing inquiry mandated by the Supreme Court in Mathews v. Eldridge, 424 U.S. 319, 321 (1976).  None of those courts have articulated how a mandatory movement restriction is not a liberty interest; none has evaluated the risk of erroneous deprivation of that liberty interest.  See, United States v. Peeples, 630 F.3d 1136 (9th Cir. 2010); United States v. Kennedy, 327 Fed.Appx. 706, 707 (9th Cir. 2009).

**2.      The Adam Walsh Act amendments are invalid as applied to Mr. Karper.**

But for the mandatory imposition of a curfew and electronic monitoring required by the Adam Walsh Act amendments, Mr. Karper would not have been subject to those highly restrictive conditions under the specific facts and circumstances of his case.  Accordingly, those amendments are unconstitutional as applied to Mr. Karper.

As noted by Magistrate Judge Treece, in the enactment of the Adam Walsh Act

amendments to the Bail Reform Act, Congress made no empirical findings that those charged with consumption of child pornography are any more likely to flee or to present a greater danger to the community or risk to commit further crimes if released without mandatory movement restrictions and monitoring.  To the extent the government has suggested there were legislative findings prior to enactment to support the mandatory release conditions, that suggestion is false.

The text of the "ADAM WALSH CHILD PROTECTION AND SAFETY ACT OF 2006", at Pub.L. No. 109-248, 120 Stat.587, contains no findings relating to the imposition of mandatory release conditions.  See, 120 Stat. at 617.  The "findings" cited by the government at page 7 of its Memorandum in Support relate to the Adam Walsh Act's provisions specifically dealing with efforts to control "The effect of the intrastate production, transportation, distribution, receipt, advertising, and possession of child pornography on the interstate market in child pornography...."  120 Stat. at 623.  Indeed, the mandatory release conditions were late additions to the Adam Walsh Act without substantive debate or findings establishing the need for mandatory release conditions.

Mr. Karper has strong, life-long ties to the area around Schoharie County.  There are no circumstances in his history suggesting that he is a risk of non-appearance or a danger to the community in the absence of restrictive conditions like home detention and electronic monitoring.  The nature and circumstances of the case, allegations of internet consumption of child pornographic images with absolutely no suggestion of inappropriate behavior toward minors or anyone else, on its own does not suggest dangerousness necessitating those conditions. In the absence of the mandate of the Adam Walsh Act amendments requiring the imposition of those conditions, the Court would have no basis specific to Mr. Karper's case or his history to

justify the imposition of home detention with electronic monitoring.

Indeed, Magistrate Judge Treece noted in his decision that, "If charged with any other federal crime, for all intents and purposes, Karper would have been an appropriate candidate to be released on his own recognizance or possibly on a rather nominal bond, along with some pretrial conditions of release other than curfew or electronic monitoring."

Accordingly, the Court should strike the conditions in question on the basis that they violate Mr. Karper's 5th Amendment right to due process.

**B.**     **The Conditions of Release Mandated by the Adam Walsh Act Violate the Eighth Amendment Prohibition on Excessive Bail.**

The Eighth Amendment provides "excessive bail shall not be required." U.S. amend. VII.

> Bail must be set at an amount no higher than an amount reasonably calculated to fulfill the Government's purpose of assuring the presence of the defendant, but no more.... "The only arguable substantive limitation of the Bail Clause is that the Government's proposed conditions of release or detention not be 'excessive' in light of the perceived evil." Salerno, 481 U.S. at 754, 107 S.Ct. 2095. In determining whether the Government's response is excessive, a court must compare the response against the interest the Government seeks to protect such as defendant's appearance at trial and protecting the safety of the community.

United States v. Torres, 566 F.Supp.2d 591, 599, 600 (W.D.Tex.2008).

Here, for the same reasons the Adam Walsh Act amendments violate the 5th Amendment Due Process Clause as applied to Mr. Karper, the amendments also violate the prohibition on excessive bail under the 8th Amendment, as applied to Mr. Karper.  Even though the government has a legitimate interest in protecting the community, neither the nature and circumstances of the case–the alleged computer consumption of child pornography--nor Mr. Karper's history and characteristics require the imposition of home detention with electronic monitoring to serve that purpose.  As in Polouizzi and Torres, the imposition of those conditions are excessive, as applied

to Mr. Karper, in light of the "perceived evil".  <u>See</u>, <u>United States v. Polouizzi</u>, 697 F. Supp. 2d

381, 394-395 (E.D.N.Y. 2010); <u>United States v. Torres</u>, 566 F. Supp. 2d 591, 601-602 (W.D.

Tex. 2008).

**CONCLUSION**

      For the foregoing reasons, the Court should deny the government's request to revoke the

decision of Magistrate Judge Treece and hold that the Adam Walsh Act amendments to the Bail

Reform Act of 1984 are unconstitutional.

DATED:       September 23, 2011       LISA PEEBLES
                                    Federal Public Defender


                          By:   <u>/s/ *Timothy E. Austin*</u>
                                Timothy E. Austin, Esq.
                                Assistant Public Defender
                                Bar No.: 508098
                                39 North Pearl St., 5th Floor
                                Albany, New York 12207
                                Tel:  (518) 436-1850
                                Fax: (518) 436-1780
                                Email:  tim_austin@fd.org

To:     United States District Court Clerk
         Tina Sciocchetti, Esq., AUSA

# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF NEW YORK

---

**UNITED STATES OF AMERICA**

      **CERTIFICATE OF SERVICE**

    **v.**

**DAVID R. KARPER, JR.,**      **Docket No. 11-CR-130 (TJM)**

        **Defendant.**

---

     I, Timothy E. Austin, Esq., attorney of record for the above-named defendant, hereby certify that on September 23, 2011, I electronically filed the foregoing Memorandum in Opposition to Government's Motion for Review and Revocation of Magistrate Judge's Decision and Order, using the CM/ECF system, which sent notification of such filing to Tina Sciocchetti, Assistant U.S. Attorney.

            LISA PEEBLES
            Federal Public Defender


By:   /s/ Timothy E. Austin
            Timothy E. Austin, Esq.
            Assistant Public Defender
            Bar No.: 508098
            39 North Pearl St., 5th Floor
            Albany, NY 12207